UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN A. MAY, Conservator
of the estate of CAROLYN HEGGS,

    Plaintiff,

v.                                                                                   Case No. 08-15263
                                                                                 Hon. Lawrence P. Zatkoff

JP MORGAN CHASE & CO.,

    Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 8, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on the parties' cross motions for summary judgment.[1] The parties have fully briefed each motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

---

[1] Defendant mis-filed its motion on the dispositive motion cut-off date, filing electronically only its motion and not the accompanying brief [dkt 33]. Realizing this error, Defendant filed the complete document the next day [dkt 34]. Because Plaintiff has not stated an objection to this procedure, the Court accepts and has considered Defendant's second-filed motion for summary judgment [dkt 34]. Accordingly, the Court denies Defendant's first-filed motion for summary judgment [dkt 33] as moot.

## II. BACKGROUND

Carolyn Heggs was employed by Defendant as a bank teller for over 20 years. While employed, she participated in a retirement plan and a 401(k) savings plan. Ms. Heggs subsequently suffered a head injury in an automobile accident. She was appointed a legal guardian by the Oakland County Probate Court on August 14, 2002.

Plaintiff Alan May is the appointed conservator of Ms. Heggs's estate. Plaintiff represents that he was first appointed as conservator on March 1, 2005. Plaintiff informed Defendant of this appointment, and he had frequent correspondence with Defendant regarding Ms. Heggs's accounts.

Plaintiff filed letters of conservatorship with Defendant to indicate that he was acting as conservator of Heggs's estate. In March 2005, Plaintiff filed letters of conservatorship that contained the following express notation: "These letters of authority expire and all powers hereunder shall terminate at midnight April 26, 2006." Plaintiff later filed letters with a stamped extension of the termination date until April 26, 2007. Following the April 26, 2007, termination date, Defendant insists that Plaintiff did not file renewed letters of conservatorship for approximately 13 months.

On July 8, 2003, and June 4, 2004, Heggs withdrew $4,803.28 and $1,593.59 from her accounts. Defendant debited Heggs's 401(k) plan in the amount of $7,146.24 to repay these loans with interest in 2007. In addition, on July 31, 2007, Ms. Heggs requested a $41,462.41 distribution from her retirement plan. She received these benefits from Defendant effective November 1, 2007.

Plaintiff originally filed this lawsuit in the Oakland County Probate Court styled as a "Complaint for Return of Property." Plaintiff demanded that Defendant return a total of $48,608.65 to the estate, which includes (1) the $7,146.24 debited from the 401(k) account; and (2) the $41,462.41 withdrawal. Plaintiff also seeks interest, incurred taxes and penalties, and attorney's

fees.

Defendant removed the case to federal court based on preemption under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, because this case involved an ERISA-governed retirement plan. Plaintiff filed a motion to remand the case based on the probate exception to ERISA preemption, which motion the Court denied. The Court also dismissed Defendant's third-party complaint against Alan May in his individual capacity, finding no authority that would hold a conservator individually liable for losses suffered by a third party. The parties have each filed a motion for summary judgment, which are ripe for review.

## III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A. Discovery Motions

The Court's April 24, 2009, scheduling order [dkt 14], set a discovery cut-off date of October 26, 2009. On October 15, 2009, Plaintiff filed a motion to hold depositions by remote means [dkt 24]. On October 21, 2009, Plaintiff filed a motion to modify the scheduling order [dkt 27]. In addition, on October 19, 2009, Defendant filed a "Motion for Determination That Case Will be Decided on Administrative Record Only" [dkt 26].

The Court finds all three motions to be untimely filed. The Court's scheduling order clearly states that all discovery motions must be *filed and heard* before the discovery cut-off date. None of the above-referenced motions met this requirement. The parties have not provided any explanation why they waited until the week before the discovery cut-off date to initiate the above motions.

Accordingly, Plaintiff's motions to hold depositions by remote means [dkt 24] and to modify the scheduling order [dkt 27], and Defendant's motion regarding the administrative record [dkt 26] are DENIED as untimely.[2]

### B. Motion to Amend Complaint

After the dispositive motions were filed, Plaintiff filed a motion to amend his complaint [dkt 38], seeking to add Access HR, allegedly the plan's administrator, and the ERISA plans as party-defendants. This was in response to Defendant's position in its motion for summary judgment that Plaintiff's case should be dismissed because Plaintiff sued the employer rather than the plan

---

[2]The Court is obligated, however, to consider the substance of Defendant's motion (*i.e.*, whether the Court is limited to review of the administrative record), when analyzing the merits of the cross motions for summary judgment.

administrator. Defendant counters that new parties were to have been added prior to the Court's scheduling conference.

The Court first notes that Plaintiff's motion is exceedingly untimely. But, it cannot overlook the fact that Defendant removed this case to federal court, where it actively litigated the matter for over a year, without earlier asserting that it was not a proper party-defendant.

The Court will deny Plaintiff's motion to amend because, based on the discussion *infra*, any amendment to add additional parties would be futile because Defendant is entitled to summary judgment on the merits.

**C. Motions for Summary Judgment**

The Court's review has been rendered somewhat difficult because Plaintiff did not file an amended complaint stating his claims in terms of ERISA. As a result, the Court will consider Plaintiff's motion under each of the three civil-enforcement provisions of the Act.

29 U.S.C. § 1132 provides the following civil causes of action brought by a "participant or beneficiary" of an ERISA-governed plan:

> (1) An action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." § 1132(a)(1)(B);
>
> (2) An action to enforce 29 U.S.C. § 1109, which imposes fiduciary duties on plan administrators. § 1132(a)(2); and
>
> (3) An action to "(A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan; (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. § 1132(a)(3).

*See, e.g.*, *Murray v. HSBC Fin. Corp.*, No. 09-10156, 2009 WL 3241971, at *3 (E.D. Mich. Oct. 8, 2009).

The latter two provisions must be dismissed as possible avenues of relief. First, Plaintiff cannot utilize § 1132(a)(2) in his individual claim for benefits. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007) ("Plaintiffs cannot bring suit under § 1132(a)(2) to recover personal damages for misconduct, but rather must seek recovery on behalf of a plan."); *Murray*, 2009 WL 3241971, at *3 (E.D. Mich. Oct. 8, 2009) ("Individual participants or beneficiaries cannot recover under 1132(a)(2)."). Although individual plaintiffs may have standing to assert a claim under this provision, the alleged injury must be to the *plan*, and not the individual. *See Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 679 (6th Cir. 2008) ("[T]he plain language of the statute compels our conclusion that an individual participant in a defined contribution plan should have standing to seek recovery *for losses to their pension plan*.") (emphasis added); *Kline v. Fidelity Invests. Institutional Operations Co.*, No. 07-13368, 2008 WL 360637, at *4 (E.D. Mich. Feb. 8, 2008) (finding that the plaintiff could not state a § 1132(a)(2) claim because she sought individual monetary damages that would be paid to her directly, rather than recovery for losses to the plan). Plaintiff seeks a direct monetary payment here; therefore, he cannot proceed under § 1132(a)(2).

Second, because Plaintiff seeks relief by means of monetary damages (*i.e.*, legal relief), he cannot invoke the equitable relief available under § 1132(a)(3). *See generally Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of *legal* relief."); *see also Loren*, 505 F.3d 598 ("Therefore, Plaintiffs may bring suit in their individual capacities under § 1132(a)(3) for injunctive or other appropriate equitable relief, but not for monetary damages."); *Murray*, 2009 WL 3241971, at *3–4 (relying on *Loren*).

The only remaining remedies are those available under § 1132(a)(1)(B). Under that section, the Court reviews an administrator's decision regarding benefits *de novo*, unless the plan grants the

6

administrator discretion in administering the plan, in which case the decision is reviewed to determine whether the decision was arbitrary or capricious. *Smith v. Bayer Corp. Long Term Disability Plan*, 275 Fed. Appx. 495, 504 (6th Cir. 2008); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998).

>The plan at issue grants the administrator the following authority:

>>The Plan Administrator shall, in conjunction with the Benefits Fiduciary Committee as set forth in Section 9.2, have the right to construe and interpret any and all of the provisions of the Plan and to determine any questions arising thereunder or in connection with the administration, interpretation and application of the Plan, including, without limitation, the discretionary authority to interpret the terms of the Plan, including all disputed and uncertain items, to decide all questions of fact, to determine eligibility for and the amount of benefits (including participation) and to resolve and remedy ambiguities, inconsistencies or omissions in the Plan; provided, however, that in the determination of any question requiring the exercise of discretion by the Plan Administrator, such determination shall apply in a uniform and nondiscriminatory manner to employees similarly situated. Any such construction or interpretation shall be conclusive and binding on any Participant and any Beneficiary thereon, any Alternate Payees, and on every other person or party interested in, or concerned with, the Plan. All deference permitted by law shall be given to such determinations.

Admin. R. at AR 000157 [dkt 32]. The Court finds that this language grants the administrator discretion in interpreting the terms of the plan. *See, e.g., Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845–46 (6th Cir. 2000). Accordingly, the Court will limit its review to whether the administrator's actions were arbitrary or capricious. Further, the Court is limited to the administrative record when reviewing a claim involving an administrator's decision under 1132(a)(1)(B). *See, e.g.*, *Wilkins*, 150 F.3d at 615.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (quoting

*Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1975)) (internal quotation marks omitted). "Under the arbitrary-and-capricious standard, [the Court] must uphold the administrator's decision 'if the administrator's interpretation of the Plan's provision is reasonable.'" *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009) (quoting *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 300 (6th Cir. 2006)). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis*, 887 F.2d at 693 (quoting *Pokratz*, 771 F.2d at 209) (internal quotation marks omitted).

"Every employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a). The written plan must specify "the basis on which payments are made to and from the plan." *Id*. § 1102(b)(4). An ERISA claim "therefore stands or falls by 'the terms of the plan[.]'" *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan.*, __ U.S. ___, 129 S. Ct. 865, 875 (2009).

Regarding incapacity or other disability, the plan states that:

> If any Participant or Beneficiary who is entitled to receive payments hereunder is incapable of receiving or disbursing the same by reasons of age, illness, infirmary or any other incapacity of any kind, the Plan Administrator, *upon receipt of satisfactory evidence of incapacity*, may direct the Trustee to apply such payment directly for the comfort, support, and maintenance of each Participant or Beneficiary or to pay the same to any responsible person caring for the Participant or Beneficiary who is determined by the Plan Administrator to be qualified to receive and disburse such payments for the benefit of such individual.

Admin. R. at AR 000170 [dkt 32] (emphasis added).

Defendant argues that because Plaintiff failed to file updated letters of conservatorship after the prior letters had expired, the administrator was not presented with "satisfactory evidence of incapacity," and the administrator was required to honor Ms. Heggs's requests directly. After fully

8

reviewing the administrative record, the Court finds that Defendant's explanation for its decision is reasonable, especially considering that Plaintiff has never contested that valid letters were on file with Defendant at the time of the distributions. Because Defendant's explanation is reasonable, the Court cannot find that Defendant's actions were arbitrary or capricious.

Plaintiff questions how "Ms. Heggs miraculously becomes competent to manage her affairs after the expiration date on Letters of Guardianship and Conservatorship, and then again becomes incompetent when the Letters are updated." Pl.'s Mot. Summ. J. at 5. Although Plaintiff's frustration at the factual accuracy of such a premise is understandable, a Michigan state-court opinion illustrates the legal effect of expired letters of conservatorship. In *In re Thomas Estate*, 211 Mich. App. 594 (1995), a bank accepted funds for a legally-incapacitated individual into a deposit account. The bank released the funds to the conservator based on an order from another jurisdiction, even though the Michigan letters of conservatorship had expired. *Id.* at 597. The court held that it was the bank's duty to examine the Michigan letters of conservatorship, and its failure to conduct a reasonable inquiry led to the improper release of the funds. *Id.* at 601.

Here, a similar, but converse, situation has occurred. Defendant consulted the most recent letters of conservatorship, and it found that the letters' expiration date had passed. Under *Estate of Thomas*, Defendant would have subjected itself to liability had it allowed Plaintiff to withdraw funds as conservator based on expired letters of conservatorship. *See Echelon Homes, L.L.C. v. Carter Lumber Co.*, 472 Mich. 192, 201 (2005) (In *Thomas*, there were letters—letters that explicitly stated the date when the guardianship was to terminate. The bank did not consult these letters when it statutorily had an affirmative duty to do so. As a result, the bank was held liable for improper disbursement of funds."). Adopting Plaintiff's position would place Defendant in an impossible

9

situation when faced with expired letters of conservatorship: It would be liable to the individual if the conservatorship had in fact terminated, and it would be liable to the conservator if the conservatorship had not terminated.

Plaintiff's remaining arguments are unpersuasive. Plaintiff first argues that even if the letters of conservatorship had expired, Defendant was on notice of Heggs's incapacity because she had a legal guardian. Plaintiff's exhibits indicate correspondence between Heggs's former guardian (Allied Health Management) and Bank One that occurred between December 12, 2002, and May 10, 2005. Pl.'s Ex. 2. Plaintiff also attaches a sworn affidavit from Steven Siporin that details two incidents in which Heggs was allowed to withdraw from her Bank One accounts in 2004. Ex. 3. Plaintiff also attaches current letters of guardianship certified on May 22, 2009, and expiring on July 17, 2010. Notably missing from these documents is any evidence on the administrative record that there were valid letters of guardianship on file with Defendant when it made its administrative decision to release benefits to Ms. Heggs.

Likewise, Plaintiff's contention that Defendant is somehow culpable because it mischaracterized the letters of conservatorship as a power of attorney is similarly unavailing because despite the nomenclature used, it remains undisputed that current letters were not on file with Defendant.

Plaintiff also suggests that he maintained correspondence with Defendant at various times while the letters were expired, but these allegations fail to rebut Defendant's explanation that Plaintiff failed to provide satisfactory evidence of Ms. Heggs's disability as required by the terms of the plan.

In sum, Plaintiff has not demonstrated that Defendant's actions in this matter were arbitrary

or capricious. The Court therefore affirms Defendant's administrative decisions, and grants its motion for summary judgment. Plaintiff's motion for summary judgment is correspondingly denied.

## V. CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that:

(1) Plaintiff's motions to hold depositions by remote means [dkt 24] and to modify scheduling order [dkt 27], and Defendant's motion regarding the administrative record [dkt 26] are each DENIED;

(2) Defendant's motion for summary judgment [dkt 34] is GRANTED; and

(3) Plaintiff's motion for summary judgment [dkt 31] is DENIED.

This order resolves all pending claims and closes the case.

IT IS SO ORDERED.

        S/Lawrence P. Zatkoff
        LAWRENCE P. ZATKOFF
        UNITED STATES DISTRICT JUDGE

Dated: September 8, 2010

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 8, 2010.

        S/Marie E. Verlinde
        Case Manager
        (810) 984-3290